**Guy BRANSCOME, Guy Branscome, Jr., J. B. Branscome and Edward Hays, etc., Plaintiffs-Appellees,**

v.

**Harvey A. SCHONEWEIS, Defendant-Appellant.**

**No. 15282.**

United States Court of Appeals Seventh Circuit.

May 23, 1966.

Rehearing Denied June 15, 1966.

Stuart Dobbs, George B. Gillespie, Springfield, Ill., for defendant-appellant, Gillespie, Burke & Gillespie, Springfield, Ill., of counsel.

James H. Manns, Springfield, Ill., C. T. Sanders, Kansas City, Mo., Wm. M. Giffin, Springfield, Ill., for plaintiffs-

---

appellees, Curren, Friedman & Giffin, Springfield, Ill., of counsel.

Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.

KNOCH, Circuit Judge.

Defendant-appellant, Harvey A. Schoneweis, has taken this appeal from a judgment of the United States District Court in favor of the plaintiffs-appellees, Guy Branscome, Guy Branscome, Jr., J. D. Branscome, and Edward Hays, d/b/a Grenada Livestock Exchange of Grenada, Mississippi, in the amount of $15,569.42, plus costs and interest, and $5,000 attorney's fees.

This suit was brought under § 309 of the Packers and Stockyards Act, Title 7, U.S.C.A. § 210, which provides:

> § 210. Proceedings before Secretary for violations generally; action to enforce orders

(a) Any person complaining of anything done or omitted to be done by any stockyard owner, market agency, or dealer (hereinafter in this section referred to as the "defendant") in violation of the provisions of sections 205–207 or 208 of this title, or of an order of the Secretary made under sections 201–203 and 205–217a of this title, may, at any time within ninety days after the cause of action accrues, apply to the Secretary by petition which shall briefly state the facts, whereupon the complaint thus made shall be forwarded by the Secretary to the defendant, who shall be called upon to satisfy the complaint, or to answer it in writing, within a reasonable time to be specified by the Secretary. If the defendant within the time specified makes reparation for the injury alleged to be done he shall be relieved of liability to the complainant only for the particular violation thus complained of. If the defendant does not satisfy the complaint within the time specified, or there appears to be any reasonable ground for investigating the complaint, it shall be the duty of the Secretary to investigate the matters complained of in such manner and by such means as he deems proper.

(b) The Secretary, at the request of the livestock commissioner, board of agriculture, or other agency of a State or Territory, having jurisdiction over stockyards in such State or Territory, shall investigate any complaint forwarded by such agency in like manner and with the same authority and powers as in the case of a complaint made under subsection (a) of this section.

(c) The Secretary may at any time institute an inquiry on his own motion, in any case and as to any matter or thing concerning which a complaint is authorized to be made to or before the Secretary, by any provision of sections 201–203 and 205–217a of this title, or concerning which any question may arise under any of the provisions of such sections, or relating to the enforcement of any of the provisions of such sections. The Secretary shall have the same power and authority to proceed with any inquiry instituted upon his own motion as though he had been appealed to by petition, including the power to make and enforce any order or orders in the case or relating to the matter or thing concerning which the inquiry is had, except orders for the payment of money.

(d) No complaint shall at any time be dismissed because of the absence of direct damage to the complainant.

(e) If after hearing on a complaint the Secretary determines that the complainant is entitled to an award of damages, the Secretary shall make an order directing the defendant to pay to the complainant the sum to which he is entitled on or before a day named.

(f) If the defendant does not comply with an order for the payment of money within the time limit in such order, the complainant, or any person for whose benefit such order was made, may within one year of the date of the order file in the district court of the United States for the district

in which he resides or in which is located the principal place of business of the defendant or in any State court having general jurisdiction of the parties, a petition setting forth briefly the causes for which he claims damages, and the order of the Secretary in the premises. Such suit in the district court shall proceed in all respects like other civil suits for damages except that the findings and orders of the Secretary shall be prima facie evidence of the facts therein stated, and the petitioner shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings unless they accrue upon his appeal. If the petitioner finally prevails, he shall be allowed a reasonable attorney's fee to be taxed and collected as a part of the costs of the suit. Aug. 15, 1921, c. 64, § 309, 42 Stat. 165.

The plaintiffs were registered with the Secretary of Agriculture as a market agency to buy and sell livestock on a commission basis, and as a dealer to buy and sell livestock for their own account. They initially filed a complaint in August, 1961, with the Secretary of Agriculture alleging sales of calves in June and July, 1961, to the defendant herein, an individual d/b/a the Tallula Cattle Company, Tallula, Illinois, and one Irvin C. Woodrum. Defendant was registered with the Secretary of Agriculture as a market agency to sell livestock on a commission basis at the Tallula Cattle Company. He was also a dealer buying and selling livestock in commerce. Both the Grenada Livestock Exchange and the Tallula Cattle Company were posted stockyards subject to the provisions of the Packers and Stockyards Act. Mr. Woodrum was an individual engaged in business as a dealer within the meaning of the Act buying and selling livestock in commerce.

In their complaint to the Secretary, the plaintiffs alleged further that checks in the amounts of $8,103.21 and $7,466.21 signed by Mr. Woodrum, given in payment for the aforesaid calves, were both dishonored by the drawee bank for lack of sufficient funds and that the purchase price remained due and owing.

Mr. Woodrum filed no answer to the complaint. Mr. Schoneweis filed an answer denying the allegations of the complaint. After a hearing at which oral and documentary evidence was adduced in the Office of the General Counsel, U. S. Department of Agriculture, the Secretary of Agriculture issued findings of fact and conclusions of law, and ordered both Mr. Schoneweis and Mr. Woodrum jointly and severally to pay the complaining plaintiffs $15,569.42 plus interest. The defendant's petition for reconsideration was denied and plaintiffs brought this suit alleging failure to comply with the Secretary's order.

As indicated above, the findings and order of the Secretary are prima facie evidence of the facts therein stated. The parties stipulated that the issues be submitted to the District Court for judgment, without further trial, on the transcript of testimony and exhibits from the hearing in the General Counsel's office plus certain additional exhibits and depositions. After his study of these documents, the District Judge entered his own findings of fact and conclusions of law pursuant to the Federal Rules of Civil Procedure, Rule 52(a).

The District Judge's findings, which are substantially supported by the record, may be summarized as follows.

Messrs. Schoneweis and Woodrum in 1957 became associated in the operation of the livestockyard known as the Tallula Cattle Company with defendant providing the initial working capital, opening a bank account in the name of the Tallula Cattle Company, and registering with the Department of Agriculture as a marketing agency. Mr. Woodrum, Mr. Schoneweis' brother-in-law, was to be yard manager. A 2% commission on the sale of all consigned cattle was to be divided equally. The two men continued in such operation until July, 1961.

In the meantime, both men evidently continued as individuals in the business of buying and selling livestock in com-

merce. When they consigned cattle for sale through the Tallula Cattle Company, they each paid the regular 2% commission and individually received such profit or sustained such loss as resulted from these individual sales.

In April, 1958, the plaintiffs began doing business with what they believed to be the Tallula Cattle Company.

Guy Branscome testified that in the fall or winter of 1957, one Luke Gaule who had been buying cattle to be shipped to Tallula, Illinois, called to report his sale of the auction business at Tallula to I. C. Woodrum and Harvey Schoneweis. While on the telephone, he introduced Irvin Woodrum as the active trader, said he owned the yards; that Mr. Schoneweis was the bookkeeper, and that their money was good.

Mr. Woodrum later placed an order by telephone to be shipped to the Tallula Cattle Company. The cattle were invoiced to the Tallula Cattle Company. From April, 1958, until July, 1961, he ordered in excess of 200 loads of cattle in the same manner. With a few exceptions in which the invoices were to Irvin C. Woodrum, all these loads were invoiced to the Tallula Cattle Company.

Most of the payments were by checks drawn on Mr. Woodrum's personal account, but a number of the payments were by checks drawn on the account of the Tallula Cattle Company and signed by Mr. Schoneweis.

Guy Branscome testified further that Harvey Schoneweis visited his place of business early in 1959, after the plaintiffs began doing business with Irvin Woodrum; that while visiting in the office, Mr. Branscome had asked "What is your operation?" and Mr. Schoneweis answered, "Well, Irvin has got the barn there and we own and operate Tallula Cattle Company. We have an auction every Wednesday and we buy and sell cattle through that auction," and "Irvin does all the work, looks after the feeding and the yard and I am the bookkeeper. He don't have anything to do with the books. I am the bookkeeper and that is my position and we own the Tallula

Cattle Company." When asked how he was getting along with the cattle, he said "I think we would do better if we just sold them all each week, * * *" Mr. Branscome testified further that an auction was in process that day and during that auction, Mr. Schoneweis came over to Mr. Branscome and said "These cattle won't work up home," to which Mr. Branscome replied "I haven't bought you a one." Mr. Schoneweis had also said before leaving, "Irvin will be talking to you and just as soon as you get something give us a ring."

Guy Branscome testified also that in March, 1961, he made a routine check. He secured a report from the bank at Petersburg, Illinois, through the Grenada bank as follows:

GRENADA BANK
Grenada, Miss.

G. M. Moore
President

AFFIDAVIT

State of Mississippi
County of Grenada

Personally appeared before me the undersigned authority in and for the said county and state, the undersigned G. M. Moore, who being by me first duly sworn, deposes and makes oath as follows:

1. "That on or about March 3, 1961 I contacted Mr. Elmer Brunner, President of National Bank of Petersburg, Petersburg, Illinois, by telephone from my office in Grenada, Mississippi, concerning the moral and financial standing of the Tallula Cattle Company, Tallula, Illinois, and was informed that said cattle company enjoyed a good reputation and were honest, reliable, and dependable, and that the credit standing of said Tallula Cattle Company was good. I was also informed that our customer, the Grenada Livestock Exchange, could rely on their transaction with the Tallula Cattle Company."

Affiant further states that on the date of the making of this affidavit, that he,

the affiant, is President of Grenada Bank, Grenada, Mississippi.

Witness my signature this the 27th day of January, 1962.

/s/ G. M. Moore

G. M. Moore

Sworn to and subscribed before me this the 27th day of January, 1962.

/s/ Bettye B. Patridge

Notary Public

My commission expires May 22, 1965

He also asked the Tallula Cattle Company for a statement as to its owners and received a letter from Mr. Woodrum as follows:

Tallula, Ill.
March 27, 1961

Grenada Livestock Exchange

Mr. Guy Branscome

In answer to what you asked me about The Tallula Cattle Co. Mr. Schoneweis & Myself are The Tallula Cattle Co. We both pay the regular commission 2% on any cattle we sell through the sale take out the operating expense and divide the net commission fifty fifty. We will mail you a check on the first mail out of here when the cattle arrive. Mr. Schoneweis gets most of his cattle from Texarcana Tex or Arkansas.

I handle all the feed for all cattle charge 50 cents per head a day for all but my own. Our Auctioneer Dan Evans. Mr. Schoneweis & myself are about the only ones having any cattle here.

Yours
I. C. Woodrum

When Mr. Branscome advised Mr. Woodrum that this letter was insufficient, he received the following:

### TALLULA CATTLE CO.
Tallula, Illinois
Sale Every Wednesday

BUYER ............................................ DATE 3–29–61

SELLER ...................................................

| Pen No. | No. | Article | Price | Comm. | Net |
|---------|-----|---------|-------|-------|-----|

Grenada Livestock Exchange
Grenada Miss.

Dear Sirs.

This is to certify that we are the sole owners and operators of the Tallula Cattle Co. Tallula Ill.

Signed
I. C. Woodrum
H. A. Schoneweis

### WE MAKE NO GUARANTEE
Licensed & Bonded Under Illinois State Community Sale Law

---

These three documents were all admitted in evidence as exhibits.

Mr. Schoneweis testified that although he knew of the prior dealings with the plaintiffs, he signed the above quoted letter only because his brother-in-law misrepresented to him that the plaintiffs were proposing a change in their manner of doing business and wished in future to send cattle on consignment to the Tallula Cattle Company. Defendant argues that the letter was a clear and truthful statement of fact: that he and his brother-in-law were partners in the

auction market; that at no time did he hold himself out to the plaintiffs as a partner in Mr. Woodrum's cattle dealing business; that Mr. Woodrum was the person entrusted by the plaintiffs to secure this letter from Mr. Schoneweis and that therefore they must bear the burden of any misrepresentations used to get the defendant's signature.

However, in addition to knowing about the past dealings and in addition to having made the remarks to which Guy Branscome testified, which were certainly susceptible of the very interpretation placed on them by the plaintiffs, Mr. Schoneweis had also written checks on the account of the Tallula Cattle Company in payment for some of the cattle shipped to the Tallula Cattle Company on Mr. Woodrum's telephoned orders. Mr. Schoneweis states that these checks merely represented advances which he personally made to Mr. Woodrum. One of these checks had been sent just about the same time as the letter, all of which, as the District Judge found, reasonably fortified the plaintiffs' belief that they were dealing with partners operating under the name of the Tallula Cattle Company. The District Court found that the plaintiffs exercised due diligence, and in their dealings after March, 1961, relied in good faith, to their detriment, on Mr. Schoneweis' representation that he was a partner with Mr. Woodrum. In the light of all the circumstances then known to him, the defendant ought to have indicated the distinction between the auction market and the cattle dealing business in the letter which he knew was being sent to the plaintiffs.

Accordingly, the District Court, as had the Secretary before him, upheld the application here of the doctrine of partnership by estoppel, relying on the Illinois Uniform Partnership Act (Ch. 106½, I.R.S. § 16) which provides that one who negligently holds himself out or permits himself to be held out as a member of a partnership is estopped to deny such partnership relation as against third persons who in good faith relied on the existence of such apparent partnership and extended credit thereon. See also Daugherty v. Heckard, 1901, 189 Ill. 239, 59 N.E. 569; Flock v. Williams, 1912, 175 Ill.App. 319.

The judgment of the District Court is affirmed.

Affirmed.