**UNITED STATES of America**

v.

**JAY FREEMAN COMPANY, INC.**
**consolidated with**

**JAY FREEMAN COMPANY, INC.**

v.

**DEPARTMENT OF AGRICULTURE, PACKERS & STOCKYARDS ADMINISTRATION, Richard Davis, Jr., Director, Charles B. Jennings, Administrator, Packers & Stockyards Administration.**

**Nos. LR–C–77–348, LR–C–78–219.**

United States District Court,
E. D. Arkansas, W. D.

July 27, 1979.

---

Don N. Curdie, Asst. U. S. Atty., Little Rock, Ark., for plaintiff.

William R. Wilson, Jr., Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

ROY, District Judge.

On August 9, 1977 the Secretary of Agriculture issued a subpoena duces tecum to Jay Freeman Company, Inc. commanding it to appear before the Secretary on the 17th of August, 1977 to produce for examination and copying described documents, books or records of the company. The subpoena stated that the records are essential to an investigation by the Secretary under the Packers and Stockyards Act, 7 U.S.C. § 181 et seq., concerning payments made by the company to its customers or employees of customers, to ascertain whether the company is in conformity with the requirements of the Act.

Affidavits in the record indicate that an employee of the United States Department of Agriculture called on the Jay Freeman Company on August 15 and 16, was permitted entry, and examined some of the business records. Before he was finished Mr. Jay Freeman, a company official, challenged the jurisdiction of the Secretary of Agriculture to review the records, stating that he had a legal opinion from his trade association that his firm was not subject to the Act. The subpoena was then served but Freeman continued to deny access to the records, on the advice of his attorney. The government then filed suit. LR–C–77–348.

The complaint prays that an order to show cause issue, directing the respondent, Jay Freeman Company, to appear before this court and show cause why an order should not issue requiring it to produce the documentary evidence described in the subpoena. Freeman answered the complaint and moved to quash the subpoena. It also filed a counterclaim alleging that the action of the Secretary is part of a scheme and conspiracy to disrupt its legitimate business efforts and divert its customers to competitors and cause its employees to quit, and that Freeman is entitled to damages, attorney fees, and costs.

On June 29, 1978 Freeman filed a complaint for declaratory judgment that Freeman is not a "packer" within the meaning of the Packers and Stockyards Act and is therefore not subject to the Act. LR–C–78–219. In addition it requests an injunction restraining and enjoining the Department of Agriculture and the Packers and Stockyards Administration from issuing subpoenas to Freeman in the future. These cases were consolidated.

A hearing in open court was held on June 30, 1978 where the parties appeared by attorney and argued the legal issues. The Jay Freeman Company did not present witnesses or other evidence although it was given an opportunity to do so.

The parties joined in a stipulation describing the nature of the Freeman business to aid the court in determining whether it is a "packer" within the meaning of the Packers and Stockyards Act as amended in 1976 by Pub.L. No. 94–410, 7 U.S.C. § 191. The other issues that have been raised are whether the subpoena amounts to a warrantless search under a recent Supreme Court opinion; whether the production of the records is unduly burdensome and the subpoena is overbroad; and whether the action taken by the Secretary was in bad faith.

### I.

■ The Packers and Stockyards Act was amended in 1976. One of the changes in the Act broadened the definition of a "packer" to include persons in the business ". . . of marketing meats, meat food products, or livestock products in an unmanufactured form acting as a wholesale broker, dealer, or distributor in commerce." 7 U.S.C. § 191. It is this language that brought Jay Freeman Company within the definition of a "packer" and therefore under the jurisdiction of the Department of Agriculture.

It is stipulated that Freeman purchases foodstuffs, including meat, already processed and packed in sizes and quantities suitable for re-sale to institutions such as hospitals and schools and some restaurants and hotels. All food products sold by Freeman are in the same form, size, quantity, etc., as they were in when received by Jay Freeman Company from its suppliers. The parties have not questioned that Freeman, therefore, markets meats in a manufactured form.

Freeman asserts that the qualifying clause in § 191(c) "in an unmanufactured form," refers to persons engaged in the business of marketing meats and to a person marketing meat food products and because it markets meats in a manufactured form it is not a "packer." The government, on the other hand, claims that this qualifying clause refers only to the last antecedent in § 191(c), "livestock products."

The long standing rule of grammar is "that a modifying phrase [or clause] refers only to the last antecedent phrase or word which it can reasonably modify." It is only when the last antecedent word is separated from the modifying phrase or clause by a comma that it modifies all of the preceding words. *T. I. McCormack Trucking Co. v. United States*, 251 F.Supp. 526, 533 (D.N.J. 1966). Using this rule the marketed meats or meat food products need not be in an unmanufactured form to qualify the seller as a "packer" under the Act. The legislative history of the 1976 amendment is consistent with this construction of § 191.

Prior to 1976 one who marketed meats was specifically excluded from the definition of "packer" unless also engaged in the business of buying livestock for slaughter or engaged in manufacturing or preparing meats for sale. Senate Report No. 94–932 explained that the expanded definition of "packer" was to include businesses "marketing meats, meat food products, or livestock products" under regulation as packers. Senate Report No. 94–932, June 4, 1976, 94th Cong., 2d Sess. 10 (1976), *reprinted in* [1976] U.S.Code, Cong. & Admin. News, pp. 2267, 2276.

The Senate and the conference committee preferred to give the Secretary of Agriculture discretion to exempt "packers" included as such by the expanded definition from

the burden of filing reports where it would not serve the purposes of the Act. Senate Report No. 94–932, *supra* ; House Conference Report No. 94–1391, August 4, 1976, 94th Cong., 2d Sess. 4 (1976), [1976] U.S. Code Cong. & Admin.News, p. 2283. This provision does not appear in the amendment as enacted. The references in the reports do, however, give credence to the argument that the Congress intended to include businesses, such as Jay Freeman Company, which would not deal directly with livestock producers.

The inclusion of one such as Jay Freeman Company in the class of individuals defined as "packers" is also consistent with the legislative intent generally of the Packers & Stockyards Act "to protect consumers against unfair business practices in the marketing of meats . . . and the other products covered by the Act." *Bruhn's Freezer Meats v. United States*, 438 F.2d 1332, 1337–38, (8th Cir. 1971).

## II.

■ Jay Freeman Company has moved to quash the subpoena issued by the Secretary of Agriculture on the ground it is the equivalent to a warrantless administrative search which has been declared unconstitutional in the United States Supreme Court decision, *Marshall v. Barlows, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). That case involved an attempt by an OSHA field officer to inspect the work areas of an employment facility to determine whether it harbored safety hazards and other violations of OSHA regulations. The search was attempted pursuant to Section 8(a) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq. The Supreme Court held that warrantless searches of commercial enterprises are unreasonable and the fourth amendment "protects against warrantless intrusions during civil as well as criminal investigations." *Id.* 436 U.S. at 312, 98 S.Ct. at 1820.

The *Barlows* case is limited in its application and does not overrule or limit the decisions considering administrative subpoenas. The closing paragraph of the opinion limit-

ed its holding to a "declaratory judgment that the Act is unconstitutional insofar as it purports to authorize inspections without warrant or its equivalent and to an injunction enjoining the Act's enforcement *to that extent.*" 436 U.S. at 325, 98 S.Ct. at 1827. (emphasis added)

The instant case involves, not an on-site search, but a subpoena requesting with particularity what appears to be all of Freeman's business records pertaining to sales of meat for an eleven-month period. Such a procedure, when authorized by proper legislative authority, is constitutional. *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed.2d 614 (1946). Under the rule set out in the *Oklahoma Press* case a subpoena will withstand a motion to quash or vacate on showing the following:

1. The investigation is authorized by Congress and

2. is for a purpose Congress can order;

3. the documents sought are relevant to the inquiry and

4. the requirement of reasonableness has been met. This includes specification of the documents to be produced which is adequate, but not excessive, for the purposes of the relevant inquiry.

*Oklahoma Press Publishing Co. v. Walling*, *supra*, at 209, 66 S.Ct. at 506.

The *Barlows* decision did not change this test. In holding a warrantless search unlawful the *Barlows* court noted that:

. . . The authority to make warrantless searches devolves almost unbridled discretion upon executive and administrative officers, particularly those in the field, as to when to search and whom to search. A warrant, by contrast, would provide assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria. Also, a warrant would then and there advise the owner of the scope and objects of the search, beyond which limits the inspector is not expected to proceed.

*Marshall v. Barlows, Inc.*, 436 U.S. at 323, 98 S.Ct. at 1825, 1826.

The subpoena, by its nature, meets the last criteria, that of advising of the scope and objects to be inspected. Also, because of the nature of a subpoena, notice and opportunity to challenge the sufficiency and authority of the issuing officer by motion to quash provides the intervention of a neutral officer. In holding that an administrator had a right to judicial enforcement of subpoenas duces tecum issued by him in the course of investigation the court stated in *Oklahoma Press*:

> The short answer to the Fourth Amendment Objections is that the records in these cases present no question of actual search and seizure . . . . No officer or other person has sought to enter petitioners' premises against their will, to search them, or to seize or examine their books, records or papers without their assent, otherwise than pursuant to orders of court authorized by law and made after adequate opportunity to present objections, which in fact were made. 327 U.S. at 195, 66 S.Ct. 494.

> .    .    .    .    .

> [T]he Fourth [Amendment], if applicable, at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described,' if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant. 327 U.S. at 208, 66 S.Ct. at 505.

This rule was most recently reiterated by the Supreme Court in *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), where the Court explained: "A subpoena duces tecum issued to obtain records is subject to no more stringent Fourth Amendment requirements than is the ordinary subpoena. A search warrant, in contrast, is issuable only pursuant to prior judicial approval and authorizes Government officers to seize evidence without requiring enforcement through the courts." 425 U.S. at 446, n. 8, 96 S.Ct. at 1625, 1626 n. 8. A subpoena issued by an administrative agency may not be enforced by that agency. It must go to court to compel compliance.

### III.

■ To be valid and enforceable a subpoena must describe with specificity the things to be examined and they must be relevant to the inquiry. There are no mathematically correct formulae by which to measure the relevance of the documents to be produced. Therefore, each case must be considered on its own merits. The subpoena under consideration requested the following:

> All records pertaining to the purchase and sale of meat and meat food products by Jay Freeman Company, Inc., and any of its subsidiaries or affiliated companies, during the period January 1, 1976, to date, including but not limited to, purchase and sales invoices, sales returns and allowance records, cash receipts and disbursements journals, cancelled checks and vouchers pertaining thereto, deposit slips, payroll register, expense vouchers of officers and employees, petty cash records, advertising and sales promotion records, brokerage expense records, price lists, price concession records, accounts payable ledgers, accounts receivable ledger and general ledger.

The list of records requested is comprehensive but the court fails to understand how any of them could fail to shed light on the investigation, which is described in the subpoena as being to determine whether illegal payments were made by the defendant to its customers or employees of its customers. They all appear to be necessary to establish that no illegal payments have been made. This is within the authority granted to the Secretary by 7 U.S.C. § 222 and 15 U.S.C. § 49. The unlawful practices enumerated in § 222 include engaging in or using any unfair, unjustly discriminatory, or deceptive practice or device and making or giving any undue or unreasonable preference or advantage to any particular person or locality in any respect whatsoever, or subject any particular person or locality to any undue or unreasonable prejudice or dis-

advantage in any respect whatsoever. 7 U.S.C. § 192(a), (b).

Although the defendant claims that the breadth of the subpoena is unduly burdensome, the court notes that it is limited to a period of 11 months. The court also notes from the stipulation that the Jay Freeman Company offices outside of Little Rock, Arkansas each maintain separate records for that area of location. It is proper to conclude, therefore, that the records in the Little Rock office are for that office only. Thus, that office would not be burdened with officials checking records for the entire Jay Freeman Company organization. The rule that a subpoena not be overly burdensome does not mean that it be so framed that it causes no burden. Under the circumstances of this case the requirement that the defendant produce its financial records for an 11-month period is not so burdensome as to make the subpoena unenforceable.

The defendant complains that the information the Secretary seeks is privileged and confidential but it fails to support this contention with citation of any authority and the court does not know of any theory of law that would protect a business such as this under the circumstances.

### IV.

Jay Freeman Company's claim that the government is acting in bad faith is also unsupported by any evidence or other showing that its actions are illegal.

For the reasons set out in this memorandum opinion, the court finds that the subpoena duces tecum issued by the Secretary of Agriculture is sufficient under the law and entitled to be enforced by this court. The court therefore orders the defendant to comply with the subpoena. An order to this effect will be entered.

The Jay Freeman Company complaint asking for a declaratory judgment that it is not a "packer" as defined by the Packers & Stockyards Act is dismissed.

### ORDER

Pursuant to and in accordance with the memorandum opinion entered this date, IT IS HEREBY ORDERED:

That in case no. LR–C–77–348 the United States of America is granted judgment and the defendant, Jay Freeman Company, Inc. is ordered to comply with the subpoena. The counterclaim filed by Jay Freeman Company, Inc. is dismissed;

That in case no. LR–C–78–219 the complaint of Jay Freeman Company, Inc., is dismissed.