**Dewey VANCE, d/b/a Dewey Vance Cattle Company**

v.

**Dewey REED, d/b/a Dewey Reed Livestock Dealer.**

**No. 79–3272.**

United States District Court, M. D. Tennessee, Nashville Division.

Sept. 2, 1980.

Henry Haile, Nashville, Tenn., for plaintiff.

Samuel Manly, Louisville, Ky., William L. Small, Nashville, Tenn., for defendant.

## MEMORANDUM

WISEMAN, District Judge.

This case is before the Court on cross motions for summary judgment. Dewey Vance, a registered livestock dealer, filed a reparation complaint with the Packers and Stockyards administration of the United States Department of Agriculture on May 26, 1977, against defendant, Dewey Reed, also a registered dealer under the Packers and Stockyards Act. After completion of the administrative process, including thorough investigation, the judicial officer for the Office of the Secretary of Agriculture rendered a decision and order on February 26, 1979, ordering defendant, Dewey Reed, to pay to Dewey Vance the sum of $4,190.27 together with interest thereon at the rate of eight percent per annum from July 1, 1977. The Secretary held that defendant's failure to pay plaintiff the full purchase price was a violation of 7 U.S.C. § 208(a) (1976). *Vance v. Reed*, 38 Agric.Dec. 418 (1979). Reed has refused to comply. Plaintiff's motion for summary judgment is based simply on the Secretary's reparation order.

Defendant contends that a delay in shipping the cattle from Pulaski, Tennessee, to Amarillo, Texas, amounted to a *material* breach of contract between the parties for which he is entitled to an offset for damages in an amount equal to the amount left unpaid. Defendant further maintains that timely rescission of the contract entitles him to offset these damages. Defendant seeks summary judgment on the ground that this Court lacks jurisdiction over the subject matter of plaintiff's action.

### *Defendant's Motion for Summary Judgment*

■ The gravamen of defendant's motion for summary judgment is that this Court lacks jurisdiction over the subject matter of this case because the Secretary of Agriculture had no statutory authority to decide the case. The determination of defendant's motion rests on the issue of the Secretary's authority because absent derivative jurisdiction via 7 U.S.C. § 210 this Court has no

jurisdiction; although the parties are diverse, the amount in controversy does not exceed $10,000.

Defendant urges that plaintiff's allegation of one instance of failure to complete payment of purchase price for cattle was not an "unjust, unreasonable, or discriminatory regulation or practice" within the meaning of 7 U.S.C. § 208(a). The Secretary has decided similar cases for the past thirty years.[1] The courts, however, have not always agreed with the Secretary's assertion of jurisdiction.[2] Prior to 1976, the power of the Secretary to issue reparation orders in sales contract disputes was at best questionable.

In 1976, Congress amended the Packers and Stockyards Act to provide for prompt payment of the purchase price of livestock.[3] The purpose of the 1976 amendments was to protect livestock producers from certain business practices engaged in by members of the packing industry. 1976 U.S. Code Cong. & Ad. News, 2267, 2271. To accomplish this purpose Congress strengthened the Secretary's authority to require bonds of packers, market agencies, and dealers so that the bankruptcy of packers would not damage livestock producers as it had in the previous decade. *Id.* at 2271–72. In addition, Congress enacted the prompt payment provisions to ensure that livestock producers were paid and paid promptly for the

1. *See, e. g., Kent v. Duke,* 38 Agric.Dec. 1199 (1979); *Romrell v. Dredge,* 35 Agric.Dec. 387 (1976); *Young v. Miears,* 34 Agric.Dec. 630 (1975); *U. B. Livestock Co. v. Clark,* 25 Agric. Dec. 595 (1966); *Pack v. Rouse,* 24 Agric.Dec. 587 (1965); *Brunson v. Inland Empire Livestock Co.,* 23 Agric.Dec. 467 (1964); *Alabama Livestock Market, Inc. v. Price & Co.,* 20 Agric. Dec. 228 (1961); *Eastern Livestock Comm'n Co. v. Rudnick Livestock Sales Co.,* 9 Agric. Dec. 1085 (1950).

2. *See Van Wyk v. Bergland,* 570 F.2d 701 (8th Cir. 1978) (jurisdiction); *Hays Livestock Comm'n Co. v. Maly Livestock Comm'n Co.,* 498 F.2d 925 (10th Cir. 1974) (jurisdiction); *Branscome v. Schoneweis,* 361 F.2d 717 (7th Cir. 1966) (jurisdiction implicit); *Neugebauer v. Ryken,* 34 Agric.Dec. 1712 (S.D.S.D.1975) (jurisdiction); *Arnold Livestock Sales Co. v. Pearson,* 383 F.Supp. 1319 (D.Neb.1974) (no jurisdiction); *Guenther v. Morehead,* 272 F.Supp. 721 (S.D.Iowa 1967) (no jurisdiction); *Lewis v. Goldsborough,* 234 F.Supp. 524 (E.D.Ark.1964) (no jurisdiction); *McClure v. E. A. Blackshere Co.,* 231 F.Supp. 678 (D.Md.1964) (no jurisdiction).

3. (a) Each packer, market agency, or dealer purchasing livestock shall, before the close of the next business day following the purchase of livestock and transfer possession thereof, deliver to the seller or his duly authorized representative the full amount of the purchase price: *Provided,* That each packer, market agency, or dealer purchasing livestock for slaughter shall, before the close of the next business day following the purchase of livestock and transfer of possession thereof, actually deliver at the point of transfer of possession to the seller or his duly authorized representative a check or shall wire transfer funds to the seller's account for the full amount of the purchase price; or, in case of a purchase on a carcass or "grade and yield" basis, the purchaser shall make payment by check at the point of transfer of possession or shall wire transfer funds to the seller's account for the full amount of the purchase price not later than the close of the first business day following the determination of the purchase price: *Provided further,* That if the seller or his duly authorized representative is not present to receive payment at the point of transfer of possession, as herein provided, the packer, market agency or dealer shall wire transfer funds or place a check in the United States mail for the full amount of the purchase price, properly addressed to the seller, within the time limits specified in this subsection, such action being deemed compliance with the requirement for prompt payment.

(b) Notwithstanding the provisions of subsection (a) of this section and subject to such terms and conditions as the Secretary may prescribe, the parties to the purchase and sale of livestock may expressly agree in writing, for such purchase or sale, to effect payment in a manner other than that required in subsection (a) of this section. Any such agreement shall be disclosed in the records of any market agency or dealer selling the livestock, and in the purchaser's records and on the accounts or other documents issued by the purchaser relating to the transaction.

(c) Any delay or attempt to delay by a market agency, dealer, or packer purchasing livestock, the collection of funds as herein provided, or otherwise for the purpose of or resulting in extending the normal period of payment for such livestock shall be considered an "unfair practice" in violation of this chapter. Nothing in this section shall be deemed to limit the meaning of the term "unfair practice" as used in this chapter. 7 U.S.C. § 228b (1976).

livestock tendered. *See id.* at 2268, 2270–72, 2273–74, 2277–78, 2283, 2285–86.[4]

After the 1976 amendments the Secretary's power is indisputable. Section (c) of 228b of title 7 of the United States Code makes failure to make prompt payment an unfair practice. Section (b) of 228b allows parties to agree in writing ·to payment terms different than those required by section (a) of 228b. Neither party has alleged the existence of a written contract and none was produced in the proceeding before the Secretary of Agriculture. *Vance v. Reed, supra.*[5] Unfair practices are prohibited by Code section 192.[6] Unjust practices are prohibited by section 208.[7] By allegedly violating section 192 or section 208, defendant may be liable to "the person or persons injured" under section 209(a).[8] Plaintiff sought a valid remedy before the Secretary. 7 U.S.C. § 209(b) (1976), by bringing this reparation proceeding under United States Code section 210(a).[9] The Secretary's order

4. Between 1958 and 1975, 167 packers failed. 1976 U.S. Code Cong. & Ad.News, pp. 2267, 2271. Congress was concerned with the livelihood of producers who had been left unpaid for over $43 million worth of livestock. *Id.*

5. The only way parties can avoid the command of section (a) of 228b is to (1) expressly agree, (2) in writing, and (3) disclose the agreement in the records of the parties. 7 U.S.C. § 228b(b) (1976); *Fillippo v. S. Bonaccurso and Sons, Inc.,* 466 F.Supp. 1008 (E.D.Pa.1978).

6. Section 192 of .title 7 of the United States Code provides that "It shall be unlawful with respect to livestock . . . for any packer . . . to: (a) Engage in or use any unfair . . . practice . . .." Section 191 defnes packer as "any person engaged. in the business of (a) buying livestock in commerce for purposes of slaughter." In *United States v. Jay Freeman and Co.,* 473 F.Supp. 1265 (E.D. Ark.1979), the court held that a meat dealer, who bought food stuffs already processed and packed for resale, to be a packer within section 191, *id.* at 1267.

7. Section 208 provides that "every unjust, unreasonable, or discriminatory regulation or practice is prohibited."

8. (a) If any person subject to this chapter violates any of the provisions of this chapter, or of any order of the Secretary under this chapter, relating to the purchase, sale, or handling of livestock, he shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of such violation.

(b) Such liability may be enforced. either (1) by complaint to the Secretary as provided in section 210 of this title, or (2) by suit in any district court of the United States of competent jurisdiction; but this section shall not in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

7 U.S.C. § 209 (1976).

9. (a) Any person complaining of anything done or omitted to be done by any stockyard owner, market agency, or dealer (hereinafter in this section referred to as the "defendant") in violation of the provisions of this subchapter, or of an order of the Secretary made under this subchapter, may, at any time within ninety days after the cause of action accrues, apply to the Secretary by petition which shall briefly state the facts, whereupon the complaint thus made shall be forwarded by the Secretary to the defendant, who shall be called upon to satisfy the complaint, or to answer it in writing, within a reasonable time to be specified by the Secretary. If the defendant within the time specified makes reparation for the injury alleged to be done he shall be relieved of liability to the complainant only for the particular violation thus complained of. If the defendant does not satisfy the complaint within the time specified, or there appears to be any reasonable ground for investigating the complaint, it shall be the duty of the Secretary to investigate the matters complained of in such manner and by such means as he deems proper.

(b) The Secretary, at the request of the livestock commissioner, board of agriculture, or other agency of a State or Territory, having jurisdiction over stockyards in such State or Territory, shall investigate any complaint forwarded by such agency in like manner and with the same authority and powers as in the case of a complaint made under subsection (a) of this section.

(c) The Secretary may at any time institute an inquiry on his own motion, in any case and as to any matter or thing concerning which a complaint is authorized to be made to or before the Secretary, by any provision of this subchapter, or concerning which any question may arise under any of the provisions of this subchapter, or relating to the enforcement of any of the provisions of this subchapter. The Secretary shall have the .same power and authority to proceed with any inquiry instituted upon his own motion as though he had been appealed to by petition, including the power to make and enforce any order or orders in the case or relating to the matter or thing concerning which

is authorized by section 210(e) and plaintiff's suit for enforcement was validly brought before this Court under section 210(f).

Admittedly, neither the Secretary nor the parties before this Court relied on section 228b of the United States Code as the basis for finding an unfair practice. If not for section 228b, however, this Court would have difficulty upholding the jurisdiction of the Secretary.[10] Facts alleged by plaintiff and upon which the Secretary based his decision appear to violate the plain terms of section 228b. Regardless of whether defendant violated section 228b or whether the Secretary's decision was based on 228b, by reading section 228b *in pari materia* with section 208 the Court holds that the intent of Congress was to make failure to make prompt payment of the full contract price— or complete failure to make full payment of the contract price—an unfair practice within the meaning of sections 192 and 208. Therefore, the Secretary had proper statutory authority to decide the case in the first instance and this Court has subject matter jurisdiction. Defendant's motion for summary judgment is denied.

*Plaintiff's Motion for Summary Judgment*

■ Plaintiff's motion for summary judgment is based solely on the Secretary's decision and order. Section 210(f) provides that a suit based on a reparation order "shall proceed in all respects like other civil suits for damages." 7 U.S.C. § 210(f) (1976). The statute further requires the "findings and orders of the Secretary [to] be prima facie evidence of the facts therein stated." *Id.* Defendant attacks the findings of the Secretary. Answer of Dewey Reed at 3.02. Even though the statute elevates the findings of the Secretary to the level of prima facie evidence, the decision and order is not res judicata and defendant can overcome the prima facie showing.

■ The exclusive method for review of reparation orders of the Secretary of Agriculture is to file in a United States District Court or a state court. 7 U.S.C. § 210(f) (1976); *Maly Livestock Comm'n Co. v. Har-*

---

the inquiry is had, except orders for the payment of money.

(d) No complaint shall at any time be dismissed because of the absence of direct damage to the complainant.

(e) If after hearing on a complaint the Secretary determines that the complainant is entitled to an award of damages, the Secretary shall make an order directing the defendant to pay to the complainant the sum to which he is entitled on or before a day named.

(f) If the defendant does not comply with an order for the payment of money within the time limit in such order, the complainant, or any person for whose benefit such order was made, may within one year of the date of the order file in the district court of the United States for the district in which he resides or in which is located the principal place of business of the defendant or in any State court having general jurisdiction of the parties, a petition setting forth briefly the causes for which he claims damages, and the order of the Secretary in the premises. Such suit in the district court shall proceed in all respects like other civil suits for damages except that the findings and orders of the Secretary shall be prima facie evidence of the facts therein stated, and the petitioner shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings unless they accrue upon his appeal.

If the petitioner finally prevails, he shall be allowed a reasonable attorney's fee to be taxed and collected as a part of the costs of the suit.

7 U.S.C. § 210 (1976).

**10.** *Guenther v. Morehead,* 272 F.Supp. 721 (S.D.Ohio 1967); *McClure v. E. A. Blackshere Co.,* 231 F.Supp. 678 (D.Md.1964). The *McClure* case was decided prior to the 1976 amendments and the court found that the Secretary had no jurisdiction to resolve a case involving the nonpayment of a bill.

1. The duty imposed by section 208 is "to establish, observe, and enforce just, reasonable, and nondiscriminatory regulations and practices in respect to the furnishing of stockyard services." It would take the most violent stretching of an elastic imagination to class the nonpayment of a bill as involving a regulation or practice in respect to the furnishing of stockyard services . . . .

2. The only authority cited by the Judicial Officer were three decisions of the Secretary. The sum of an infinite number of zeros is still zero.

Were it not for the 1976 amendments to the Packers and Stockyards Act and the requisite congressional intent expressed thereby, this Court would be inclined to agree with the *McClure* decision.

*din,* 446 F.2d 4 (8th Cir. 1971). Although the district court's scope of review under the Packers and Stockyards Act has not been definitively construed,[11] similar provisions in other statutes have been explained.

Under the Perishable Agricultural Commodities Act, appellant from a reparation order gets a trial de novo at which the prima facie case made out by the findings of the Secretary will prevail unless a preponderance of evidence is presented to defeat his conclusions. 7 U.S.C. § 499g(c) (1976) (the statute expressly provides for a trial de novo). *See Spano v. Western Fruit Growers, Inc.,* 83 F.2d 150 (10th Cir. 1936); *Consolidated Citrus Co. v. Goldstein,* 214 F.Supp. 823 (D.Pa.1963); *California Fruit Exchange v. Henry,* 89 F.Supp. 580 (D.Pa.), aff'd 184 F.2d 517 (3d Cir. 1950). *See also* 47 U.S.C. § 407 (1976).

Prior to the 1978 revision, the Interstate Commerce Act had a provision almost identical to the statute before the Court.[12] In *ICC v. Atlantic Coast Line Railroad Co.,* 383 U.S. 576, 86 S.Ct. 1000, 16 L.Ed.2d 109 (1966), the Supreme Court construed the provision and held that the Secretary's findings on issues other than primary jurisdiction issues "are subject to review under the prima facie evidence provision of § 16(2), with the statutory rights of introducing evidence not before the Commission and obtaining a jury determination of disputed issues of fact." *Id.* at 594, 86 S.Ct. at 1011, 16 L.Ed.2d at 122. The Court continued in a footnote

> Section 16(2), of course, does not limit the carrier to introducing opposing evidence to rebut the prima facie effect of the Commission's order. It may also challenge the admissibility of the order on the grounds, for example, that the Commission did not afford the carrier a fair hearing or that the order was not based upon substantial evidence. But if a Commission order containing findings on all matters essential to the shipper's recovery is admitted and the carrier produces no opposing evidence, the findings and order of the Commission may not be rejected by the jury and the shipper is entitled to judgment.

*Id.* at 594 n.6, 86 S.Ct. at 1101 n.6, 16 L.Ed.2d at 122–23 n.6 (citations omitted).

The Supreme Court construction is helpful because the Interstate Commerce Act provision and the provision of the Packers and Stockyards Act are virtually identical. Its analysis is adopted by this Court for it is the only sensible reading of the "in all respects like other civil suits" clause. Therefore, under the standard announced by the Supreme Court in *Atlantic Coast Line,* this Court will hold a hearing on the disputed issues, and plaintiff's motion for summary judgment is denied.

---

11. The district court in *Neugebauer v. Ryken,* 34 Agric.Dec. 1712, 1719 (1975), held an evidentiary hearing.

12. Such suit [to enforce an order for payment of money] in the district court of the United States shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the commission shall be prima facie evidence of the facts therein stated  . . . . .

49 U.S.C. § 16(2) (1976), current version at 49 U.S.C. 11705(d)(1) (Supp. II 1978).