Joseph **GERACE**, as Commissioner of Agriculture and Markets of the State of New York, Plaintiff,

v.

**UTICA VEAL CO., INC.,** Mariano Broccoli, and Victor Broccoli, Defendants.

No. 83–CV–412.

United States District Court, N.D. New York.

Feb. 29, 1984.

Robert Abrams, Atty. Gen. of the State of N.Y., Albany, N.Y., for plaintiff; James McSparron and Alan S. Kaufman, Asst. Attys. Gen., Albany, N.Y., of counsel.

Capecelatro, Del Buono, Vaughan & Compson, P.C., Utica, N.Y., Segal & Hundley, New York City, for defendants; Salvador J. Capecelatro, Utica, N.Y., Marvin B. Segal, Edward M. Chikofsky, Harriet B. Rosen, New York City, of counsel.

## MEMORANDUM—DECISION and ORDER

MINER, District Judge.

This action is brought by Joseph Gerace,[1] Commissioner of Agriculture and Markets of the State of New York, on his own behalf and on behalf of all persons who allegedly have suffered injury from defendants' fraudulent practices, against the Utica Veal Company, Inc. (Utica Veal) and its principals, Mariano Broccoli and Victor Broccoli. The complaint includes claims predicated upon the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (RICO), various sections of the Packers and Stockyards Act, 7 U.S.C. §§ 192, 228b and common law fraud. Jurisdiction in this Court is asserted pursuant to 18 U.S.C. § 1964(c), 7 U.S.C. § 209, 28 U.S.C. § 1331 and the doctrine of pendent jurisdiction. Before the Court is defendants' motion for judgment on the pleadings, Fed.R.Civ.P. 12(c), their motion for a stay of these proceedings already having been denied in a bench decision following oral argument on November 18, 1983.

## II

According to the allegations contained in the complaint, Utica Veal is a New York

---

1. Commissioner Gerace has been substituted as plaintiff for his predecessor, Roger J. Barber, pursuant to Fed.R.Civ.P. 25(d).

corporation "engaged in the business of buying cattle and other livestock, operating a slaughterhouse and selling and distributing veal, beef, pork and other meats." Complaint at ¶ 5. Defendants Mariano Broccoli and Victor Broccoli are alleged to be the "principals, managers, and chief operating officers and primary stockholders of Utica Veal, Inc." *Id.* at ¶ 6.

Plaintiff's connection with the acts giving rise to this action stems from his responsibility for the administration of the New York Agriculture and Markets Law and the State's Brucellosis Indemnity Program. Brucellosis, or Bovine · Infectious Abortion, is a disease which affects breeding cattle and which is capable of spreading from one animal to another as well as to humans.[2] When an infected animal is identified, the most effective means of eliminating the disease is to slaughter the entire herd to which the infected animal belongs. This also is a reasonably viable economic alternative, since consumption by humans of meat from infected cattle apparently poses no known health hazard.

However, since infected cattle often are slaughtered before attaining their maximum weight and farmers thereby do not receive the otherwise full value for their herds, New York has empowered the Commissioner of Argiculture and Markets to indemnify farmers who agree to an early slaughter of their infected herds. N.Y. Agric. & Mkts.Law § 90.[3] The statutory formula for determining the State's payment to participating farmers provides that the amount of indemnity received by the farmer is reduced by the salvage value of the slaughtered animal, a value determined by the weight and quality of the slaughtered animal's carcass.

Sixteen infected herds of cattle apparently were slaughtered by Utica Veal under the State Brucellosis Indemnity Program. It is plaintiff's contention that the slaughtered cattle were underweighted, misgraded or both. As a result of this alleged fraud, the farmers.involved were paid less for their cattle by Utica Veal than they otherwise would have received. Concommitantly, by virtue of the statutory formula for indemnification, New York was obliged to make increased payments to the participating farmers.

Defendants seek a dismissal of plaintiff's RICO claim, contending it has no application to the acts of which plaintiff complains. Specifically, defendants contend that plaintiff alleges no "compensable inju-

---

**2.** According to plaintiff, in humans, the disease is known as "undulant fever." Complaint at ¶ 13.

**3.** N.Y.Agric. & Mkts.Law § 90(4) provides in part:

In the case of a bovine animal killed on account of positive reaction to Bang's disease, the owner shall, in the discretion of the commissioner, and within the amount appropriated for such purpose, be entitled to receive indemnity in a sum equal to seventy-five per cent of the difference between the full appraised value of the animal and the total of the amounts received by the owner from the sale of the animal as salvage, but not exceeding the sum of one thousand five hundred dollars for any bovine animal.

The commissioner may, in his discretion at the request of the owner, order the slaughter of non-reactor animals if he finds that they have been exposed to Bang's disease as a member of an infected herd and that the entire herd should be depopulated to control the spread of the disease. In such case, the owner shall be entitled to receive, within the amount appropriated for such purpose, indemnity in an amount equal to the difference between the full appraised value of the animal and the total of the amounts received by the owner from the federal government as indemnity and from the sale of the animal as salvage, but not exceeding the sum of three hundred dollars for a registered pure bred animal or one hundred seventy-five dollars for any other bovine animal.

The commissioner may, in his discretion, order the slaughter of any animal, or of all or part of any herd, which he finds has been exposed to Bang's disease by association with a positive reactor or by any other manner of exposure which he finds may make the animal or herd liable to contract or communicate the disease. In such case, the owner shall be entitled to receive, within the amount appropriated for such purpose, indemnity for each reactor animal and for each non-reactor animal as set forth in this subdivision unless the commissioner finds that such owner has failed to comply with any laws, rules or regulations relating to the control or eradication of brucellosis.

ry" under RICO because the damages claimed by plaintiff allegedly result solely from defendants' commission of the underlying predicate fraudulent acts. 18 U.S.C. § 1961(1). Defendants also maintain that plaintiff has failed adequately to allege the necessary pattern of racketeering activity to sustain a RICO claim. 18 U.S.C. § 1961(5).

With respect to plaintiff's claim pursuant to the Packers and Stockyards Act, defendants argue that no private right of action is provided by that Act and, in any event, the claim must be dismissed in light of plaintiff's failure to allege an intent by defendants to eliminate competition, or actions by defendants having that effect. Finally, defendants maintain that plaintiff has not complied with the pleading requirements found in Fed.R.Civ.P. 8(a) concerning this claim.

### III

#### A. RICO

■ In order to state a claim under the provisions of RICO, plaintiff must allege "(1) that the defendant[s] (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invest[ ] in, or maintain[ ] an interest in, or participate[ ] in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce. 18 U.S.C. § 1962(a)–(c) (1976)." Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir.1983). Plaintiff has met this pleading burden in the case at bar.

Here, plaintiff alleges that the defendants, through repeated instances of misweighting and undergrading slaughtered cattle, and through the use of the mails and wire communications, defrauded both the farmers whose cattle were slaughtered and the New York State Brucellosis Indemnity Program. Moreover, plaintiff alleges that the individual defendants are the principals of Utica Veal, and that the operations of Utica Veal affect interstate commerce, see, e.g., Complaint at ¶ 7. Taking these allegations as true, as it must on a motion addressed only to the sufficiency of the com-

plaint, Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), this Court concludes that plaintiff adequately has pleaded a claim for relief under the provisions of RICO. See also Soper v. Simmons Int'l, Ltd., 582 F.Supp. 987 (N.D.N.Y.1983).

■ Defendants' remaining contentions with respect to the adequacy of the RICO claim as it is pleaded in the complaint also have been rejected by the court in Moss. First, defendants contend the RICO claim must fail because plaintiff has not alleged any involvement by defendants in "organized crime." In Moss, Judge Meskill noted that, although the legislative history surrounding the enactment of RICO indicates that the eradication of organized crime was an underlying purpose of RICO, the statute itself makes no reference to that term, and such a requirement should not be read into the statute by a federal court. Moss v. Morgan Stanley, Inc., 719 F.2d at 21; see also United States v. Ivic, 700 F.2d 51, 62 (2d Cir.1983); Schact v. Brown, 711 F.2d 1343, 1353 (7th Cir.), cert. denied, —— U.S. ——, 104 S.Ct. 508, 509, 78 L.Ed.2d 698 (1983).

■ Defendant next asserts that the RICO "enterprise" must be separate and distinct from the "pattern of racketeering activity" that is alleged. The Moss court expressly rejected this contention, and cited with disapproval the decision in United States v. Anderson, 626 F.2d 1358 (8th Cir.1980), cert. denied, 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981) which reached the contrary result. See United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981); United States v. Bagaric, 706 F.2d 42 (2d Cir.1983); United States v. Mazzei, 700 F.2d 85 (2d Cir.), cert. denied, —— U.S. ——, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983). In fact, in this circuit, the RICO enterprise need consist of nothing "more than the sum of the predicate racketeering acts." United States v. Bagaric, 706 F.2d

at 55. For all of these reasons, defendants' motion to dismiss the RICO claim as facially insufficient must be denied.[4]

### B. Packers and Stockyards Act

■ In support of their motion to dismiss plaintiff's claim under the Packers and Stockyards Act, defendants maintain that no private right of action exists under that statute. *See Pacific Trading Co. v. Wilson & Co., Inc.*, 547 F.2d 367 (7th Cir. 1976). Shortly after the decision was rendered in *Pacific Trading Co.*, however, 7 U.S.C. § 209 was amended to provide the following:

Liability to individuals for violations; enforcement generally.

(a) If any person subject to this chapter violates any of the provisions of this chapter, or any order of the Secretary under this chapter, relating to the purchase, sale or handling of livestock, *he shall be liable to the person or persons injured thereby* for the full amount of damages sustained in consequence of such violation.

(b) *Such liability may be enforced* either (1) by complaint to the Secretary as provided in section 210 of this title, or (2) *by suit in any district court of the United States of competent jurisdiction;* but this section shall not in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

(emphasis added).

In determining whether § 209, as amended, provides a private action for the recovery of damages, this Court must "begin with the familiar canon of statutory construction that the starting point for the interpretation of a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod-*

*uct Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). In light of the clear and express language of § 209 providing for the right of an injured person to maintain an action in any district court of competent jurisdiction, and in the absence of any "expressed legislative intention to the contrary," this Court concludes that plaintiff is entitled to seek a private damage remedy for defendants' alleged violation of the provisions of 7 U.S.C. §§ 192 and 228b. *See, e.g., Hedrick v. S. Bonaccurso & Sons, Inc.*, 466 F.Supp. 1025, 1030 (E.D.Pa.1978); *Fillipo v. S. Bonaccurso & Sons, Inc.*, 466 F.Supp. 1008, 1016 (E.D.Pa. 1978).

■ Defendants also maintain that plaintiff's claim under the Packers and Stockyards Act is insufficient insofar as plaintiff fails to allege a restraint of trade or hindrance of competition by defendants. *Pacific Trading Co. v. Wilson & Co., Inc.*, 547 F.2d at 369. Clearly, § 202(e) of the Act, 7 U.S.C. § 192(e), prohibits only anticompetitive practices. That statute makes it unlawful to

(e) engage in any course of business or do any act for the purpose or with the effect of *manipulating or controlling prices*, or of *creating a monopoly* in the acquisition of, buying, or selling, or dealing in, any article, or of *restraining commerce.*

(emphasis added). However, subsection (a) of that statute contains no such limiting language. 7 U.S.C. § 192(a) simply makes it unlawful to "engage in or use any unfair, unjustly discriminatory, or deceptive practice or device." The original purpose in enacting the Packers and Stockyards Act, therefore, "was to combat anticompetitive *and* unfair practices in the highly concentrated meat packing industry." *United States v. Perdue Farms, Inc.*, 680 F.2d 277, 280 (2d Cir.1982) (emphasis added). *See also Swift & Co. v. United States*, 393

---

**4.** Defendants' further contention that a corporation cannot be sued under RICO is rejected. *See United States v. Hartley*, 678 F.2d 961, 988–90 (11th Cir.1982), *cert. denied*, — U.S. —, 103

S.Ct. 834, 74 L.Ed.2d 1027 (1983) (In criminal RICO prosecution, corporation simultaneously can be defendant and "enterprise").

F.2d 247, 253 (7th Cir.1968) ("Section 202(a) of the Act does not require the Government to prove injury to competition. The Act is remedial legislation and is to be construed liberally in accord with its purpose to prevent economic harm to producers and consumers at the expense of middlemen") (citations omitted). Moreover, it is clear that allegations that defendants have intentionally shortweighted cattle are sufficient to state a claim under the Act. *See Butz v. Glover Livestock Commission Co.,* 411 U.S. 182, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973); *C.D. Burrus v. United States Department of Agriculture,* 575 F.2d 1258 (8th Cir.1978) (per curiam).

■ Finally, defendants argue that plaintiff has not stated a claim pursuant to 7 U.S.C. § 228b because plaintiff has not alleged that payments by defendants were not *timely* made. This Court disagrees. Section 228b, in addition to requiring payment by a packer on the next day following purchase and transfer of livestock, requires payment of "the full amount of the purchase price." 7 U.S.C. § 228b(a). *See, e.g., Vance v. Reed,* 495 F.Supp. 852 (M.D.Tenn. 1980).

Here, plaintiff alleges that defendants' alleged deceptive practices resulted in their failure promptly to pay *full value* to farmers whose livestock was purchased by defendants. Accordingly, this Court concludes that plaintiff has, in all respects, stated a claim pursuant to the Packers and Stockyards Act in accordance with the pleading requirements of Fed.R.Civ.P. 8(a).

### IV

Accordingly, for the reasons stated above, defendants' motion for judgment on the pleadings, Fed.R.Civ.P. 12(c), is denied.

It is so Ordered.