**In re PILGRIM'S PRIDE CORPORATION (Larry and Eva Harden).**

**Civil Action No. 4:10–CV–292–Y.**

United States District Court, N.D. Texas, Fort Worth Division.

May 20, 2011.

Clayton E. Bailey, Baker & McKenzie LLP, Dallas, TX, for Pilgrim's Pride Corporation.

## ORDER REGARDING MOTIONS TO STAY

TERRY R. MEANS, District Judge.

Before the Court are two motions to stay (docs. 265, 274), one filed by Pilgrim's Pride Corporation and its affiliated reorganized debtors (collectively, "PPC") and the other by Larry and Eva Harden. After review, the Court will grant PPC's motion and deny the Hardens'.

### I. Background

PPC is a publicly-traded company that produces chicken in the continental United States, Puerto Rico, and Mexico. Larry and Eva Harden are local chicken growers who contracted with PPC in December 2007 to raise and care for a number of PPC's broiler chickens. On December 1, 2008, PPC filed a chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth division ("the bankruptcy court"). On June 16, 2010, the bankruptcy court entered an agreed order authorizing PPC to reject its broiler-grower agreements with the Hardens (bankr. doc. 5342) pursuant to 11 U.S.C. § 365(a) and Federal Rule of Bankruptcy Procedure 6006. By that order, PPC received authorization to terminate its grower contracts with the Hardens, who, in turn, were allowed to file any claims they had for damages resulting from PPC's termination of their contracts.

Accordingly, following PPC's rejection of their contracts, the Hardens filed proofs of claim in the bankruptcy court, alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, and section 192(a) of the Packers and Stockyards Act of 1921 ("PSA"), 7 U.S.C. § 1929(a). PPC filed its objections (bankr. doc. 5798) to the Hardens' proofs of claim on August 24, 2010.[1] After conducting discovery, PPC moved for summary judgment (bankr. doc. 6054) on the Hardens' claims in the bankruptcy court on December 3, 2010. That motion was briefed before the bankruptcy court and became ripe for review in that court.

Because the Hardens had invoked the ADEA, however, this Court withdrew the reference of PPC's bankruptcy case insofar as it involved the Hardens' claims (doc. 228) pursuant to 28 U.S.C. § 157(b)(5).[2] Then on March 30, 2011, PPC filed its motion to stay, seeking abatement of this case pending resolution of its summary– judgment motion. The Hardens responded by filing a motion to stay of their own. By that motion, the Hardens seek an order staying this case, including any ruling on PPC's summary-judgment motion, pending exhaustion of their administrative remedies.

## II. Analysis

In essence, it is PPC's position that this case should be stayed pending resolution of its summary-judgment motion because doing so will promote efficiency and conserve the resources of the Court as well as the parties. The Hardens agree that a stay of this case is appropriate; but they contend that their administrative remedies have not yet been exhausted and that this case should be stayed until such exhaustion occurs. According to the Hardens, they must obtain a right-to-sue letter from the EEOC before their ADEA claims are properly before the Court. In addition, the Hardens insist that their PSA claims

---

1. When PPC objected to the Hardens' proofs of claim, it created a "contested matter" under Bankruptcy Rule 9014. *See In re Canoco, Inc.*, 323 Fed.Appx. 306, 308 (5th Cir.2009) (citing Fed. R. Bankr.P. 3007 advisory committee's notes). Rule 9014 incorporates Rule 7056, which in turn provides for summary judgement. *See* Fed. R. Bankr.P. 7056, 9014(c). Thus, "[b]ankruptcy courts [and district courts that have withdrawn the reference] can render summary judgment in contested matters." *See Canoco*, 323 Fed.Appx. at 308 (citing Fed. R. Bankr.P. 9014(c)).

2. Under § 157(b)(5), this Court must "order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose." 28 U.S.C.A. § 157(b)(5) (West). Unfortunately, however, § 157 does not define the term "personal injury tort." *See In re Arnold*, 407 B.R. 849, 851 (M.D.N.C.2009). "As a result, courts have disagreed as to what constitutes a 'personal injury tort claim,' adopting one of three diverging views." *Id.* The narrowest definition of the term requires the presence of an actual physical injury. *See id.* (citing *Massey Energy Co. v. W. Va. Consumers for Justice*, 351 B.R. 348, 351 (E.D.Va. 2006)). The most expansive definition "embraces a broad category of private or civil wrongs or injuries for which a court provides a remedy in the form of an action for damages, and includes damage to an individual's person and any invasion of personal rights, such as libel, slander and mental suffering." *Id.* (quoting *Boyer v. Balanoff (In re Boyer)*, 93 B.R. 313, 317 (Bankr.N.D.N.Y.1988)) (internal quotation marks omitted). The middle ground involves "looking to whether a claim falls within the purview of a personal injury tort claim under the expansive view, yet retaining bankruptcy jurisdiction over the claim if it has 'earmarks of a financial, business or property tort claim, or a contract claim.' " *Id.* (quoting *In re Ice Cream Liquidation*, 281 B.R. 154, 161 (Bankr.D.Conn.2002)). In its Order Withdrawing Reference (doc. 228), this Court aligned itself with the courts that have taken the expansive view, determining that the Hardens' ADEA claims constitute "personal injury tort" claims for purposes of § 157(b)(5).

are under investigation before the United States Department of Agriculture and that the investigation must be completed before their PSA claims are ready for review.

■ After review of the parties' briefing and the applicable law, the Court agrees with PPC that this case should be stayed pending a ruling on PPC's motion for summary judgment. As an initial matter, the Court notes that there is little reason for the Hardens to resist the advancement of their claims on grounds of administrative barriers. The defense of failure to exhaust is waivable. *See Jones v. Bock,* 549 U.S. 199, 212, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) ("[T]he usual practice under the Federal Rules is to regard exhaustion as an affirmative defense."); *Carbe v. Lappin,* 492 F.3d 325 (5th Cir.2007) (holding, in the context of the Prison Litigation Reform Act, that exhaustion is "an affirmative defense under the Federal Rules"); *Belgrave v. Pena,* 254 F.3d 384, 386 (2d Cir.2001) (stating that failure to exhaust administrative remedies under the ADEA is an affirmative defense). Naturally, by advocating that the Hardens **did** exhaust their administrative remedies, PPC has waived its ability to challenge the Hardens' claims for failure to do so.

■ But even assuming PPC has not waived the failure-to-exhaust defense, it appears that the Hardens have taken sufficient administrative action to allow their claims to proceed. With regard to their ADEA claims, no right-to-sue letter is required. *See Julian v. City of Houston,* 314 F.3d 721, 725 (5th Cir.2002). Rather, "[f]or cases arising in Texas, a complainant

[simply] must file [an EEOC charge] within 300 days of the last act of discrimination" and "then wait sixty days before filing a civil action." *Id.* at 726.[3] Under 29 U.S.C. § 626(d), "the claimant's independent right to sue arises automatically upon the expiration of sixty days after filing of the charge with the EEOC." *Id.* (footnote omitted); *see also* 29 U.S.C.A. § 626(d) (setting out the administrative remedies that must be exhausted prior to filing suit under the ADEA). The Hardens filed their charge with the EEOC within 300 days of the alleged wrongdoing, and then waited 60 days before filing their claims against PPC. (PPC's Reply Exs. A–B.) Thus, they have exhausted their administrative remedies with respect to their ADEA claims. *See Julian,* 314 F.3d at 726 ("[A] complainant who timely files the EEOC charge and then observes the sixty-day waiting period has satisfied the statutory preconditions to filing suit.").

■ In addition, there appear to be no administrative barriers to the advancement of the Hardens' PSA claims in this Court. The text of the PSA allows for enforcement of liability under the Act "(1) by complaint to the Secretary . . . **or** (2) **by suit in any district court** of the United States of competent jurisdiction." 7 U.S.C. A. § 209(b) (emphasis added). Admittedly, "[t]here is. not a great wealth of case law under the PSA." *Hjermastad v. Cent. Livestock Ass'n, Inc.,* No. 03–2559, 2003 WL 21658260, at *5 (D.Minn. July 14, 2003). This is particularly true in a case such as this where it is the plaintiff, rather than the defendant, who insists that fur-

---

**3.** The Court is unsure where the Hardens' ADEA claims actually arose. While PPC's reply brief discusses the· requirements for filing an EEOC charge in Texas, the Hardens' EEOC charges refer to ˙a Georgia address. (PPC's Reply Ex. A.) "For a charge to be timely in a non-deferral state such as Georgia, it must be filed within 180 days of the last

discriminatory act." *Wilkerson v. Grinnell Corp.,* 270 F.3d 1314, 1317 (11th Cir.2001) (citations omitted). The differences between the Texas and Georgia requirements are inconsequential, however, because the Hardens' EEOC charges are timely under both Texas's 300–day requirement and Georgia's 180–day requirement.

ther administrative action is necessary. But there are a number of courts that have read § 209 as allowing a plaintiff to file suit in federal court to enforce PSA violations without having to first exhaust administrative remedies. *See, e.g., Yoder v. Fox*, 51 F.3d 274, at *1 (6th Cir.1995) (unpublished) ("Section 209(a) of the Packers and Stockyards Act provides a private remedy for individuals harmed by conduct which violates the Act committed by those who are subject to the Act."); *Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1389 (2d Cir.1992) ("A private right of action for damages for violations of the Act is provided by 7 U.S.C. § 209(a)."); *LDT Keller Farms, LLC v. Brigitte Holmes Livestock Co., Inc.*, 722 F.Supp.2d 1015, 1020 n. 7 (N.D.Ind.2010) (allowing claims under the PSA to proceed to trial); *Gerace v. Utica Veal Co., Inc.*, 580 F.Supp. 1465, 1469 (D.C.N.Y.1984) (holding that § 209 provides a private right of action in federal court).[4]

In any event, the Hardens have offered no authority in support of their assertion that administrative remedies must be exhausted before their claims may proceed in this Court. Nor do the Hardens offer any reason as why the administrative forum is preferable to this Court. Given that PPC is not challenging the Hardens' claims on a failure-to-exhaust theory, and considering that it is typically the plaintiff who desires the federal forum, the Court is tempted to question whether the Hardens are simply attempting to buy time. Regardless, the Hardens' claims are properly before this Court, the parties have conducted discovery, and the Hardens have briefed PPC's summary-judgment motion. In view of this, the Court concludes that the Hardens' claims should be stayed pending resolution of PPC's summary-judgment motion, rather than pending any administrative investigations into the Hardens' claims.

III.  Conclusion

In light of the foregoing, PPC's motion to stay is GRANTED and the Hardens' motion to stay is DENIED. Accordingly, all proceedings in this case involving the

---

**4.** It has been held that the doctrine of primary jurisdiction is applicable to cases arising under the PSA. *See, e.g., Kelly v. Union Stockyards & Transit Co. of Chi.*, 190 F.2d 860, 863–64 (7th Cir.1951). That doctrine "applies when a court and a regulatory agency have concurrent jurisdiction over all or part of a controversy and determines whether the court or the agency should make the initial decision." *Woodlands Telecomms. Corp. v. Am. Tel. & Tel. Co.*, 447 F.Supp. 1261, 1266–67 (S.D.Tex.1978). It "does not allocate power between courts and agencies, but governs only whether the court or agency will initially decide the particular issue." *Id.* at 1267.

But this "is not to say that [the doctrine] applies to defeat jurisdiction of the courts in all [PSA] cases, for the [United States] Supreme Court has clearly indicated that the doctrine is operative only in certain classes of cases." *McCleneghan v. Union Stock Yards Co. of Omaha*, 298 F.2d 659, 667 (8th Cir.

1962). Such classes include "those in which 'the inquiry is essentially one of fact and of discretion in technical matters; and uniformity can be secured only if its determination is left to the [Secretary of Agriculture].'" *Id.* (quoting *Great N. Ry. v. Merchants' Elevator Co.*, 259 U.S. 285, 291, 42 S.Ct. 477, 66 L.Ed. 943 (1922)). The Hardens offer no argument regarding the application of the primary-jurisdiction doctrine to their PSA claims. And in the Court's view, their allegations that PPC discriminated against them on the basis of their ages does not appear to create an inquiry "of discretion in technical matters," nor does it appear that a ruling by this Court will implicate concerns of uniformity. *Id.* Therefore, the Court sees no reason to invoke the primary-jurisdiction doctrine as a basis for staying this case, especially considering that the Hardens have not invoked the doctrine, the parties have already conducted discovery, and the defendant does not oppose the case's proceeding against it in federal court.

claims of Larry and Eva Harden are STAYED pending resolution of PPC's summary-judgment motion. *See In re Ramu,* 903 F.2d 312, 318 (5th Cir.1990) ("The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation."); *see also Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936) (noting that a court has "inherent" power to stay proceedings).